IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT RIVARD and DOGLEG PROPERTIES, INC. *formerly known as* RIVARD POPCORN PRODUCTS, INC., Plaintiffs, v. JERRY BELLO, *et al.*, Defendants. | CIVIL ACTION NO. 12-4642 |

# MEMORANDUM OPINION

RUFE, J.                                                                                           MARCH 27, 2013

Before the Court is Defendants' Motion to Dismiss. For the reasons that follow, the Motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Because the Court writes primarily for the parties, the Court states herein only those facts which are necessary to provide a general context for its analysis. Additionally, in stating the factual background, the Court accepts as true the facts alleged in the Complaint, and draws all reasonable inferences in favor of Plaintiffs.[1]

Plaintiff Robert Rivard is the President and sole shareholder of Plaintiff Dogleg Properties, Inc., formerly known as Rivard Popcorn Products, Inc. ("RPI"), a snack foods manufacturer with the exclusive right to purchase specialized machines used to produce snack foods. RPI used these machines at its manufacturing facility in Lancaster County, Pennsylvania.[2] Defendants Jerry Bello and Jason Cohen operate several entities identified by Plaintiffs in the Complaint as Defendants World Gourmet Acquisition, LLC; World Gourmet

---

[1] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[2] Compl. ¶¶ 1-4, 12-14.

Acquisition Company, LLC; and World Gourmet Marketing, LLC (collectively "World Gourmet") that are also in the snack food industry.[3]

In 2006, Plaintiffs became aware that Bello and Cohen were interested in finding a company to manufacture a World Gourmet product line, and the parties began negotiating an agreement whereby RPI would manufacture this product line using its specialized machines.[4] To this end, on December 6, 2006, Rivard, Bello, and Cohen executed a Supply, Marketing, Option and Stock Purchase Agreement (the "December 2006 Agreement").[5] The December 2006 Agreement provided, *inter alia*, that RPI would manufacture World Gourmet Products and in return, World Gourmet would use "commercially reasonable efforts" to solicit customers for RPI's manufacturing facility and would use their snack food industry and marketing expertise for RPI's benefit.[6] By the Agreement, Rivard also agreed to give World Gourmet an option to purchase his business assets and to sell World Gourmet a portion of RPI common stock.[7] It also provided that the parties would execute a Shareholders' Agreement whereby Bello and Cohen would be elected as directors of RPI.[8]

Plaintiff alleges that as shareholders and directors, Bello and Cohen assumed operational control of RPI and having this control, engaged in a scheme to defraud Plaintiffs. Bello and Cohen allegedly drove the enterprise value of RPI to zero so that they could exercise their option

---

[3] Compl. ¶¶ 5-9.

[4] Compl. ¶ 19.

[5] Compl. ¶ 28; December 2006 Agreement (Compl., Ex. A).

[6] Compl. ¶ 23; see also December 2006 Agreement ¶ 6.

[7] December 2006 Agreement ¶ 13.

[8] Compl. ¶ 42; see also Compl., Ex. C.

2

to acquire RPI without paying additional consideration for the acquisition.[9] Plaintiffs refused Defendants' attempt to exercise their option.

The parties attempted to resolve their dispute by entering into an Asset Purchase Agreement dated June 4, 2008 ("the 2008 Agreement"), by which Plaintiffs agreed to sell RPI assets to World Gourmet for $350,000.[10] However, Plaintiffs allege that two years later, in June 2010, they discovered that "mere weeks" after the June 4, 2008 sale, Defendants experienced "astronomical growth" in the acquired business, selling the acquired business along with its business on June 15, 2010 for $112,000,000.[11] Plaintiffs claim that Bello and Cohen used their position as fiduciaries of RPI and their knowledge of the snack food industry to defraud Rivard, who was in poor health, by inducing him to sell RPI for far less than it was worth only to later enjoy a great benefit for themselves.

Plaintiffs' seven-count Complaint alleges the following: Breach of Fiduciary Duties against Defendants Bello and Cohen (Count I); Breach of Contract against Defendant World Gourmet Acquisition, LLC (Count II); Fraud against all Defendants (Count III); Interference with Prospective Contractual Business Relations and Opportunities against all Defendants (Count IV); Conversion of Business Opportunities against all Defendants (Count V); Civil Conspiracy against all Defendants (Count VI); and Unjust Enrichment, pled in the alternative as to all Defendants (Count VII). Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[9] See Compl. ¶¶ 42-65.

[10] Compl. ¶¶ 72, 74; 2008 Agreement (Compl, Ex. E). The portions of the Agreement relevant to the instant motion are cited and explained below as they related to the issues before the Court.

[11] Compl. ¶¶ 82-91.

**II.     STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[12] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[13] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[14] Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[15] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[16] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[17]

**III.    DISCUSSION**

    **A.     The Scope of the Release**

Defendants argue that the Complaint should be dismissed because the claims are barred by a release provision in the 2008 Agreement. Defendants assert that the release bars claims arising out of any and all pre-2008 Agreement conduct (i.e., conduct relating to the December 2006 Stock Purchase Agreement and related agreements). Plaintiffs disagree, arguing that the

---

[12] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[13] ALA, Inc., 29 F.3d at 859; Fay, 2008 WL 205227, at *2.

[14] Twombly, 550 U.S. at 555, 564.

[15] Id. at 570.

[16] Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[17] Id. (quoting McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

4

release does not bar pre-2008 Agreement conduct claims to the extent such claims relate to fraud or willful malfeasance. Plaintiffs further submit that in the event their fraud claim is successful, the 2008 Agreement, including the release is void. The validity of the 2008 Agreement and Plaintiffs' fraud claim depend on facts which have yet to be established. Therefore, according to Plaintiffs, Defendants' argument is not ripe for disposition at this time.

The Release here provides:

> "*Except for the obligations contained in this Agreement and the other agreements signed at the Closing and those arising out of fraud or willful malfeasance or from a breach of warranty or misrepresentation contained in this Agreement*, [the parties] do hereby release and forever discharge the others from any and all causes of action, claims, understandings, agreements, liabilities, demands and obligations whatsoever, both in law and in equity or otherwise, known or unknown, which either party ever had, now has or may hereafter have against the other upon or by reason of any matter, cause, or thing up to the date of the execution of this Agreement, *including with respect to the matters referred to or resulting from the Supply, Marketing, Option and Stock Purchase Agreement dated December 6, 2006, Amendment No. 1 dated March 20, 2007, the Agreement Among Shareholders dated April 28, 2007, and the Agreement Among Shareholders dated August 26, 2007 and the business relationship created thereby*."[18]

Plaintiffs rely on the "except for" language as excluding all claims arising out of fraud or willful malfeasance; Defendants cite the "including" language for the proposition that all pre-2008 Agreement conduct is excluded.

The Third Circuit has held that "generally speaking" an affirmative defense, such as release, should not be relied upon "to trigger dismissal of a complaint under Rule 12(b)(6)," unless the defense is evident from the face of the complaint.[19] Because Plaintiffs' fraud claim puts the enforceability of the release at issue and because the resolution of this claim depends on

---

[18] 2008 Agreement ¶ 13.19, [Doc. No. 1-2, 1-3] (emphasis added).

[19] Victaulic v. Tieman, 499 F.3d 227, 235 (3d Cir. 2007) (quoting In re Tower Air, 416 F.3d 229, 238 (3d Cir. 2005)) (internal quotation marks omitted).

5

facts which have not been established on this record, the Court cannot, at this stage of the proceedings, hold that the release is enforceable and bars all of Plaintiffs' claims.[20]

If Plaintiff's interpretation of the 2008 Agreement is correct, then most, if not all, of Plaintiffs' claims are beyond the scope of the release which expressly excludes obligations arising out of fraud and willful malfeasance. "Under Pennsylvania law, '[t]he effect of a release is determined by the ordinary meaning of the language contained therein,'" and interpretation of release provisions are construed pursuant to traditional principles of contract law.[21] When the contract language is ambiguous and the court cannot reasonably ascertain the intent of the parties from the writing alone, the parol evidence rule does not preclude the admission of extrinsic evidence to determine the intent of the parties and the circumstances surrounding the execution of the agreement.[22]

Plaintiffs argue that all fraud and misconduct claims are excluded from the release. Defendants argue that the fraud and misconduct claims are excluded from the release only to the extent such clams are based on conduct which occurred after the execution of the 2008 Agreement. At this stage of the proceedings, it is not appropriate to discern the meaning of the release, particularly as it may be necessary to consider extrinsic evidence of its meaning, and the Motion will be denied on this basis.

---

[20] See generally Jakimas v. Hoffmann-La Roche, Inc. 485 F.3d 770, 781-82 (3d Cir. 2007).

[21] Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 338 (E.D. Pa. 2006) (alteration in original) (quoting Buttermore v. Aliquippa Hosp., 561 A.2d 733, 735 (Pa. 1989) and citing Harrity v. Med. Coll. of Pa. Hosp., 653 A.2d 5, 10 (Pa. Super. Ct. 1994)).

[22] Miller v. Poole, 45 A.3d 1143, 1146 (Pa. Super. Ct. 2012) (quoting Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006)).

**B. Statute of Limitations**

As with Defendants' release argument, a finding that Plaintiffs' claims are barred by the applicable statutes of limitation would be premature. It is not evident from the face of the Complaint that Plaintiffs' claims are barred by the applicable limitations period and therefore, disposition of this issue on a motion to dismiss is not warranted.[23] Moreover, because Plaintiffs claim that the discovery rule operates to equitably toll the limitations period, resolution of the issue involves a highly factual inquiry which is not appropriate at this stage of the proceedings.[24]

**C. Plaintiffs' Fraud Claim as it Relates to the Integration Clause Contained in the 2008 Agreement**

Under Pennsylvania law, "[w]here the parties [to a contract], without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence."[25] Here, Plaintiffs rely on extrinsic evidence to support their fraud claim. Defendants submit that Plaintiffs are barred from doing so by the above-stated "parol evidence rule" given the integration the clause contained in the 2008 Agreement, and that absent extrinsic evidence, Plaintiffs cannot state a claim for fraud.

---

[23] W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 105 n.13 (3d Cir. 2010).

[24] See generally Gleason v. Borough of Moosic, 15 A.3d 479, 484-85 (Pa. 2011).

[25] Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924) (internal quotation marks omitted)).

"[F]or the parol evidence rule to apply, there must be a writing that represents the 'entire contract between the parties.'"[26] Where, as here, there is an integration clause which states that the writing is meant to represent the parties' entire agreement as to the subjects contained therein, this first element is satisfied.[27] "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements *involving the same subject matter* as the contract is almost always *inadmissible to explain or vary the terms of the contract*."[28] Exceptions to this general rule exist, however, and include claims for fraud in the execution---i.e., "that a term was omitted from the contract because of fraud, accident, or mistake"---and those that involve contractual ambiguity, in which case parol evidence is introduced to resolve this ambiguity---as may be necessary to determine the scope of the release contained in the 2008 Agreement.[29]

Here, Plaintiffs argue that the parol evidence rule does not bar evidence relating to the fraud claim because these claims do not involve the same subject matter as the 2008 Agreement and because they do not seek admission of evidence to explain or vary the terms of the Agreement. If this is the case, then the parol evidence rule is not necessarily a bar to Plaintiffs' claims. However, the Complaint is ambiguous as to the scope of Plaintiffs' fraud claims. Accordingly, the Court will grant the Motion to Dismiss this claim.

---

[26] Id. (quoting Gianni, 126 A. at 792).

[27] Id. The integration clause here is contained in paragraph 13.7 of the June 4, 2008 Asset Purchase Agreement (Compl., Ex. E [Doc. Nos. 1-2; 1-3]). It provides: "This Agreement supersedes all prior agreements, whether written or oral, between the parties with respect to its subject matter (including any letter of intent or understanding and any confidentiality agreement between Buyer and Seller) and constitutes (along with the Exhibits and Schedules and other documents delivered pursuant to this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended, supplemented, or otherwise modified except by a written agreement execute by the party to be charged with the amendment."

[28] Id. at 436-37 (emphasis added).

[29] Id. at 437.

### D. Tortious Interference and Breach of Contract Claims

Plaintiffs have adequately pled claims for tortious interference[30] and breach of contract.[31] Defendants' arguments to the contrary are based on assertions of fact not evident from the face of the Complaint. Since, at this stage of the proceedings, the Court is limited to the facts as alleged in the Complaint and all logical inferences that can be drawn therefrom, these arguments do not provide a basis for dismissal at this time.[32]

### E. Unjust Enrichment

While under Pennsylvania law, an unjust enrichment or *quantum meruit* claim is inapplicable when the relationship between parties is founded on a written agreement, "[t]his does not mean . . . that the existence of an express contract between the parties will always preclude a *quantum meruit* claim. Rather, the Court must inquire at the motion to dismiss stage whether there is any dispute as to the existence of the express contract, and whether the scope of the contract includes the transaction that is the basis for the *quantum meruit* claim."[33] Plaintiffs plead Count VII for unjust enrichment in the alternative to their contractual claims; they are

---

[30] See Douglas v. Osteen, 317 F. App'x 97, 100 (3d Cir. 2009) ("To state a claim for tortious interference with contractual relations under Pennsylvania law, a plaintiff must allege (1) the existence of a contractual relationship; (2) the defendant's intent to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for the interference; and (4) damages from the interference." (citing Small v. Juniata Coll., 682 A.2d 350, 354 (Pa. Super. Ct. 1996))).

[31] See Ware v. Rodale Press, Inc., 322 F.3d 218, 225-26 (3d Cir. 2003) ("Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999))).

[32] See generally Brown & Brown, Inc. v. Cola, No. 10-3898, 2010 WL 5258067, at *10 (E.D. Pa. Dec. 22, 2010); see also ALA, Inc., 29 F.3d at 859.

[33] Star v. Rosenthal, 884 F. Supp. 2d 319, 333 (E.D. Pa. 2012) (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969) and Phila. Hous. Auth. v. CedarCrestone, Inc., 562 F. Supp. 2d 653, 656 (E.D. Pa. 2008)) (internal quotation marks omitted).

permitted to do so at this stage of the proceedings where the enforceability of the Agreements are at issue.

### F. Claims asserted by Rivard

Defendants argue generally that the Court should dismiss all claims to the extent they are asserted by Plaintiff Rivard individually. Defendants do not cite any legal authority for this proposition; they merely state that Rivard fails to allege any facts supporting a claim as to him personally as opposed to RPI. In the absence of a specific legal or factual basis to support this argument, the Court will not dismiss all claims asserted by Rivard at this time. Defendants may raise this argument in a properly supported motion later in the proceedings.[34]

### G. Jury Demand

The 2008 Agreement contains an explicit waiver of the parties' right to a jury trial.[35] Although it is well-established that "a private litigant may waive his right to a jury trial in a civil case,"[36] the Court will not strike Plaintiffs' jury demand at this time. "The right to a jury trial in a civil case is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution. . . . '[Therefore] courts indulge every reasonable presumption against waiver.' To be valid, a jury waiver must be made knowingly and voluntarily based on the facts of the case."[37] Since Plaintiffs' fraud claims potentially put the enforceability of the jury waiver at issue, the Court will not strike the jury demand at this time.

---

[34] Additionally, the Court notes that the Complaint contains allegations regarding Rivard's individual involvement in the events at issue. Specifically, the Complaint alleges that Rivard is the sole shareholder of RPI and was a party to the 2008 Agreement, as well as the Shareholder's Agreement. To the extent Rivard may not have standing to assert certain claims against Defendants, this argument may be raised later in the proceedings provided it is specially made and adequately supported.

[35] 2008 Agreement ¶ 13.20.

[36] Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007).

[37] Id. (internal citations omitted).

## IV. CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss will be granted in part and denied in part. The Motion is granted as to Plaintiffs' fraud claim. The claim will be dismissed without prejudice to Plaintiffs' right to clarify this claim. The Motion is denied in all other respects.

An appropriate Order follows.